```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

POWER CORPORATION, a Florida Corporation,

        Plaintiff,

vs.                      Case No. 2:12-cv-192-FtM-29DNF

AMERISURE INSURANCE COMPANY, a foreign profit corporation,

        Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Amerisure Insurance Company's Motion for Summary Judgment (Doc. #23) filed on July 6, 2012, and Power Corporation's Cross Motion for Summary Judgment filed on July 27, 2012. (Doc. #27.) Both parties filed responses. (Docs. ##27, 29.) Both parties seek a declaratory judgment regarding a duty to defend pursuant to an insurance policy. Both parties agree that there are no disputed issues of material fact which preclude summary judgment for one of them, although they dispute who should prevail. For the reasons set forth below, Amerisure's motion is granted and Power Corporation's motion is denied.

**I.**

Amerisure Insurance Company (Amerisure) issued a commercial general liability insurance policy to Power Corporation (Power), policy number GL 20131660801 (the Amerisure Policy), for the period

of September 30, 2011, to September 30, 2012. In pertinent part, Amerisure agreed to defend Power in lawsuits asserting certain types of claims, subject to enumerated exclusions.

On November 18, 2011, Holding Company of the Villages, Inc. (Holding Company) filed suit against Power in the United States District Court for the Middle District of Florida entitled <u>Holding Co. of the Vills., Inc. v. Power Corp.</u>, Case No. 5:11-cv-631-OC-37TBS (the <u>Holding Company</u> case). Power made a request to Amerisure to defend Power in the <u>Holding Company</u> case. On or about February 2, 2012, Amerisure sent Power a Declination of Coverage letter. Power asserts that Amerisure's declination was wrongful, and initiated the above captioned case seeking a declaratory judgment that Amerisure had a contractual duty to defend Power in the <u>Holding Company</u> case. In response, Amerisure filed an Answer and Counterclaim seeking a declaratory judgment that it had no contractual duty to defend Power in the <u>Holding Company</u> case.

**II.**

**A.  General Legal Principles**

The applicable legal principles are well established and not in dispute. Under Florida law,[1] the interpretation of insurance contract provisions is a matter of law to be decided by the court.

---

[1] Since this is a diversity action initiated in Florida, the Court must apply the substantive law of the forum state. <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 n.1 (11th Cir. 2008). Neither party disputes that Florida substantive law applies.

James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008). "[I]nsurance contracts are construed according to their plain meaning", with "[a]mbiguities . . . construed against the insurer and in favor of coverage." Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint." Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442-43 (Fla. 2005)(citations omitted). This duty to defend exists "even if the allegations in the complaint are factually incorrect or meritless." Jones, 908 So. 2d at 443. "If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20, 23 (Fla. 1st DCA 2011). Any doubt as to the duty to defend is resolved in favor of the insured. Id.

On the other hand, an insurer has no duty to defend if the allegations in the underlying complaint show the applicability of a policy exclusion. Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So. 3d 1220, 1223-24 (Fla. 2d DCA 2011); State Farm Fire and Cas. Co. v. Tippett, 864 So. 2d 31, 35 (Fla. 4th DCA 2003). "Because they tend to limit or avoid liability, exclusionary clauses are

construed more strictly than coverage clauses." Category 5 Mgmt. Grp., 76 So. 3d at 23.

Thus, if the facts set forth in the Holding Company complaint fairly and potentially bring the suit within the policy coverage, and do not show the applicability of a policy exclusion, Amerisure was required to defend Power in the Holding Company lawsuit. This determination is made by comparing the policy language with the allegations of the underlying complaint. Jones, 908 So. 2d at 443.

**B. The Amerisure Policy Language**

The relevant portion of Part B[2] of the Amerisure Policy regarding the duty to defend provides as follows:

   **1. Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

   . . .

   b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

---

[2]Both parties agree that Part A of the Amerisure Policy provides no duty to defend the Holding Company case.

(Doc. #23-2, p. 30.)  The term "personal and advertising injury" is defined in the Amerisure Policy as "injury, including consequential 'bodily injury', arising out of one of more of" seven specifically identified offenses, including "f. The use of another's advertising idea in your 'advertisement'"; or "g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'".  (Doc. #23-2, p. 14.)[3]  "Advertisement" is in turn defined as "a notice that is broadcast or published to the general public or specific market segments about your good, products or services for the purpose of attracting customers or supporters."  (Id., p. 12.)[4]

The Amerisure Policy also contains sixteen exclusions for which the insurance does not apply.  The only relevant exclusion is "I" entitled "Infringement of Copyright, Patent, Trademark or Trade Secret" (the IP Exclusion).  The IP exclusion provides:

**2. Exclusions**

This insurance does not apply to:

. . .

I. Infringement of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade

---

[3] The verbiage of both (f) and (g) in the standard industry contracts was changed to its current language in 1998. State Farm Fire and Cas. Co. v. Steinberg, 393 F.3d 1226, 1231 n.2 (11th Cir. 2004).

[4] The definition of "advertisement" was added to the standard industry contracts in 1998. Steinberg, 393 F.3d at 1231 n.2.

>   secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
>   However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Id. at 6.)[5]

**C. The Holding Company Complaint**

The Holding Company complaint alleged that Holding Company owned several residential communities throughout Florida and elsewhere that use names designated as "The Villages of [community property]", and owns United States Trademark Registrations for the mark "THE VILLAGES". In or about June 2004, Power was in the process of developing a residential community in Sumter County, Florida. The residential community was located directly across the street and adjacent to certain Holding Company residential developments. Power sent a request to Holding Company's attorney seeking permission to use "The Villages" as part of its proposed trademark for its residential development, and the request was denied on July 8, 2004. Nonetheless, Power began to use the mark and name "Lakeside Landings at the Villages" in connection with the sale of real estate in its residential community. After Holding Company demanded that Power cease using the name "Lakeside Landings at the Villages", Power agreed to re-name the property "Lakeside

---

[5]The intellectual property exclusion was added to the standard industry contract in 2001. Steinberg, 393 F.3d at 1231 n.2.

Landings". Power utilized the name "Lakeside Landings" for a period of time, but later renamed the residential community "Villages of Lakeside Landings."

The Holding Company case further alleged that on November 7, 2011, Holding Company sent Power a cease and desist letter asserting that the use of "Villages of Lakeside Landings" violated Holding Company's registered trademarks. Power refused to change the name, and continued to infringe on the mark and name. The Complaint in the Holding Company case was then filed, and asserted the following six (6) claims, in addition to a request for injunctive relief: Federal Trademark Infringement (Count I); False Designation of Origin and Dilution (Count II), Federal False Advertising (Count III), Injury to Business Reputation and Dilution (Count IV); Trademark Infringement and Unfair Competition Under Common Law (Count V); and Unfair Competition in Violation of the Florida Deceptive and Unfair Trade Practices Act (Count VI).[6]

### III.

Power asserts a two-fold argument: First, it asserts that Count III of the Holding Company case is a covered, non-excluded

---

[6] The underlying case is no longer pending, as a Final Judgement was entered on January 4, 2013, following a settlement reached in mediation. See Holding Co. of the Vills., Inc., Case No. 5:11-cv-631-OC-37TBS. (Docs. ## 48, 52.) Both parties have responded to the Court's inquiry as to whether the declaratory judgment action was now moot (docs. ##37-38), and both agree that it is not moot because payment of the costs of defense incurred by the insured is still at issue. The Court agrees with the parties, and finds this case is not moot.

claim under the Amerisure policy. Second, it asserts that trade dress is a covered action under the Amerisure Policy, and even though no specific cause of action for trade dress is set forth in the Holding Company case, factual allegations contained in that Complaint would support a claim for trade dress. For both reasons, Power argues that Amerisure had a contractual duty to defend Power in the Holding Company case. Amerisure asserts that the plain language of the IP Exclusion unambiguously excludes coverage for both Count II and any un-asserted trade dress claim in the Holding Company complaint, and therefore it had no duty to defend Power.

**A.   Count III of the Holding Company Case**

Count III of Holding Company alleges that Power reproduced, copied or imitated Holding Company's registered mark and name in selling, offering for sale, marketing, and/or advertising its services and products in connection with the Villages of Lakeside Landings, that this conduct constituted false and misleading advertising under the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), and that it caused damages to Holding Company. (Doc. #2-2, ¶¶ 48-52.) To establish this claim, Holding Company would have to demonstrate that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is

-8-

likely to be-injured as a result of the false advertising." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260-61 (11th Cir. 2004). See also Sovereign Military Hospitaller Order of Saint John etc., 702 F.3d 1279, 1294 (11th Cir. 2012).

**(1) Covered Cause of Action**

The first issue is whether Count III of the Holding Company Complaint sets forth a cause of action which fairly and potentially brings the suit within the "Insuring Agreement" portion of the Amerisure Policy. As discussed earlier, this portion of the Amerisure Policy obligates Amerisure to defend Power in any lawsuit seeking damages because of "personal and advertising injury" to which the insurance policy applies. There was no "personal injury" of any kind alleged in the Holding Company case, so only "advertising injury" is at issue. The Eleventh Circuit has set forth a three-part test as to "advertising injury": "(1) the suit must have alleged a cognizable advertising injury; (2) the infringing party must have engaged in advertising activity; and (3) there must have been some causal connection between the advertising injury and the advertising activity." Steinberg, 393 F.3d at 1231, citing Hyman v. Nationwide Mutual Fire Ins. Co., 304 F.3d 1179, 1187 & n.7 (11th Cir. 2002); Elan Pharm. Research Corp. v. Employers Ins., 144 F.3d 1372 (11th Cir. 1998). The Court finds that all three elements were satisfied in this case.

**(a) Cognizable Advertising Injury:**

The only possible "advertising injury" under the Amerisure Policy would be injury arising out of sub-paragraph (f) (the "use of another's advertising idea" in Power's advertisement), or sub-paragraph (g) ("infringing upon another's copyright, trade dress or slogan" in Power's advertisement). Trade dress will be discussed later.

Generally, an "advertising idea" can be "any idea or concept related to the promotion of a product to the public." Hyman, 304 F.3d at 1188. "Advertisement" is defined in the Amerisure Policy, in relevant part, as "a notice that is broadcast or published to the general public or specific market segments about *your goods products or services* for the purpose of attracting customers or supporter . . ." (Doc. #23-2, p. 36)(emphasis added). "Your product" is defined under the policy as "[a]ny goods or products, *other than real property*, manufactured, sold, handled, distributed or disposed by: (a) You; (b) Others trading under your name; (c) A person or organization whose business assets you have acquired." (Doc. #23-2, p. 39)(emphasis added). The Amerisure Policy does not define "your goods" or "your services," so these terms have their ordinary meanings. Hyman, 304 F.3d at 1188.

Count III alleges "Federal False Advertising" under the Lanham Act, and alleges that in November, 2011, Power resumed using its mark and name "THE VILLAGES". Count III alleges that Power took

deliberate and calculated steps to re-name its community VILLAGES OF LAKESIDE LANDINGS, and "changed its community signage, website and advertising to reflect its mark and name, VILLAGES OF LAKESIDE LANDINGS." (Doc. #23-1, ¶25). This action was alleged to likely cause confusion, mistake or deception as to Power's services and the source or origin of its services. (Id. at ¶30.) While selling real estate was not a "product" as defined by the Amerisure Policy (which excludes the sale of real estate as a "product"), the Holding Company Complaint alleges Power's business to include services. The Court finds that the underlying Complaint fairly and potentially alleged a cognizable advertising injury within the meaning of the Amerisure Policy.

**(b) Engaged In Advertising Activity**:

The allegations in the Holding Company complaint also assert that plaintiff was engaged in an advertising activity. The Holding Company complaint specifically alleges that Power used the name "the Villages" in its advertisement, its website, and in community signage. These activities clearly fall within the policy definition of "advertisement" as a notice that was broadcast or published.

**(c)  Causal Connection**:

"[T]he injury for which coverage is sought must be caused by the advertising itself." Hyman, 304 F.3d at 1191. The infringement must be committed in an advertisement rather than in

the sale of the product or service.  <u>Hyman</u>, 304 F.3d at 1192.  The <u>Holding Company</u> Complaint alleged a causal connection between the advertising injury and the advertising activity. (Doc. #23-1, ¶¶25-33.)  Accordingly, the <u>Holding Company</u> complaint clearly pled all three elements of an "advertising injury" bringing the complaint within the insuring agreement, subject to certain enumerated exceptions.

### (2)  IP Exclusion and Its Exception

An otherwise covered cause of action will not be covered if it is a cause of action "to which this insurance does not apply."  The insurance does not apply for those causes of actions covered by an Exclusion, including the IP Exclusion.  The IP Exclusion states that the insurance does not apply to advertising injury "arising out of the infringement of . . . trademark . . . or other intellectual property rights. . . ."  The IP Exclusion further provides that "such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.'"

Amerisure asserts that any claim arising out of trademark infringement is excluded under the plain language of the IP Exclusion.  Amerisure contends that because Count III could not have been asserted "but for" the alleged trademark infringement, it is specifically excluded under the IP exclusion.  Power responds

that the IP Exclusion is not applicable because it contains an exception for trademark infringements in advertisements.

The Court finds that the IP exclusion clearly excludes Count III from coverage. Although Count III alleges a Federal False Advertising claim, rather than a claim for trademark infringement, the "false or misleading" aspect of the claim is grounded on the alleged improper use of a trademark. Accordingly, Count III "arises from" trademark infringement and therefore falls under the IP exclusion.

Power's argument that Count III falls within the exception set forth in the IP exclusion is unavailing. The IP Exclusion provides the following exception: "However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." Thus, only three categories of infringement fall within the exception: (1) copyright; (2) trade dress; and (3) slogan. None of these three categories are implicated in the factual allegations set forth in Count III. Accordingly, Count III is excluded from coverage under the Amerisure policy agreement.

**B. Trade Dress**

Power also asserts that because the IP exclusion specifically states that "trade dress" claims are covered under the policy, Amerisure owes it a contractual duty to defend notwithstanding the fact that no trade dress claim is actually set forth in the <u>Holding Company</u> complaint. Specifically, Power asserts that paragraphs 25,

26, 27, 30, and 33 of the Holding Company Complaint contain factual allegations which support a cause of action for trade dress. Furthermore, Power asserts that one of the exhibits attached to the Complaint, a letter from Jeffrey P. Skates (Skates) to "Mr. Higgs" dated November 7, 2011, (the November 7 letter) alleges that Power is engaged in trade dress violations. (Doc. #23-1, p. 31.) Therefore, the Complaint fairly and potentially brings the suit within the exception set forth in the IP exclusion. Amerisure argues to the contrary.

A plaintiff bringing a claim for trade dress infringement under the Lanham Act must prove: "(1) the defendant's product is confusingly similar to its product; (2) the similar features of the two products are primarily non-functional; and (3) the plaintiff's product is distinctive." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1321 (11th Cir. 2012) (citing Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1192, 1202 (11th Cir. 2004))(footnote omitted). Trade dress is defined as "the total image of a product and may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983) (citations omitted). Trade dress may "extend to marketing techniques" and can include certain "sales technique[s] designed to make the product readily identifiable to consumers and unique in

the marketplace," Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 831 (11th Cir. 1982). Because trade dress may encompass marketing or packaging designed to draw attention to a product, it can constitute an "advertising idea" or "style of doing business," Hyman, 304 F.3d at 1189, and may constitute an "advertising injury" under the insurance policy. Hyman, 304 F.3d at 1191.

With respect to the third element of trade dress, namely that the plaintiff's product is distinctive, the Eleventh Circuit recently held that the proper test to determine whether trade dress is inherently distinctive is the Seabrook test, as set forth in Brooks Shoe. Miller's Ale House, Inc., 702 F.3d 1312; see also Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854 (11th Cir. 1983)(initially adopting test); Seabrook Foods, Inc. v. Bar-Well Foods, Ltd., 568 F.2d 1342 (C.C.P.A. 1977). Under that test, the Court "must consider whether it is a common basic shape or design, whether it is unique or unusual in a particular field, and whether it is a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." Miller's Ale House, Inc., 702 F.2d at 1323. (internal quotations omitted).

For example, in Miller's Ale House, the Eleventh Circuit found that although the defendant's restaurant was similar to plaintiff's restaurant because it featured "its name in red letters on the

outside of its building and on its menu, branding items it sells with that name, dressing its staff in khakis and a polo shirt, featuring a center bar with a soffit, offering seating at 'high-top' tables, and paneling its walls with wood" this was not "unique" and was simply a "common . . ." design of a standard sports bar or brew pub. Id. at 1324-1325.

The Court finds that none of the paragraphs of the Holding Company complaint cited by the plaintiff makes any factual allegations that the Holding Company's product, its residential communities, is distinctive. Furthermore, a reading of the factual allegations elsewhere in the complaint fail to plead that the residential communities are distinctive.

In addition, the Court is not persuaded that the November 7 letter fairly and potentially pleads a cause of action for trade dress. This matter was filed in federal court, therefore attachments to the Complaint constitute part of the complaint. Crenshaw v. Lister, 556 F.3d 1283, 1291 (11th Cir. 2009)(citing Fed. R. Civ. P. 10(c)). In the November 7 letter, Skates states, "Power Corp[oration's] steps to make its development appear similar to that of the look and feel of The Villages also constitutes trade dress infringement and adds to the likelihood of confusion." (Doc #23-1, p. 31.) This is the only statement in the letter which can be fairly read to relate to a claim of trade dress. However, there is nothing in the letter, or elsewhere in the Complaint or the

attachments thereto which provide factual allegations which suggest that the Holding Company had a distinctive product rather than a standard residential community.  Accordingly, the complaint in the <u>Holding Company</u> case lacks any factual allegations which fairly and potentially support a claim for trade dress.

Accordingly, it is now

**ORDERED**:

1.  Amerisure Insurance Company's Motion for Summary Judgment (Doc. #23) is **GRANTED.**

2.  Power Corporation's Cross Motion for Summary Judgment (Doc. #27) is **DENIED.**

3.  It is hereby declared that Amerisure Insurance Company did not owe a duty to defend Power Corporation in the matter of <u>Holding Company of the Villages, Inc. v. Power Corp.</u>, Case No. 5:11-cv-631-OC-37TBS.

4.  Judgment is entered in favor of Amerisure Insurance Company and against Power Corporation.

5.  The Clerk is directed to terminate all pending deadlines and motions, enter judgment accordingly, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   26th   day of August, 2013.

_/s/ John E. Steele_
JOHN E. STEELE
United States District Judge

Copies: Counsel of record